UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------**X**

DONALD COOKE,                                   **AMENDED COMPLAINT**

                  Plaintiff,          Demand for Trial by Jury

      -against-                                 Docket No. 21-cv-1371 (NRB)

CITY OF NEW YORK,  PETER SGANGA,
CHRISTOPHER MCGRISKEN, MICHAEL
KORABEL, EDWARD REARDON and JOHN
or JANE DOE 1-10,

               Defendants.
---------------------------------------------------------------**X**

      Plaintiff, Mr. Donald Cooke, by and through the undersigned attorneys, Sim & DePaola,

LLP, for his complaint against the Defendants, City of New York, Peter Sganga, Christopher

McGrisken, Michael Korabel, Edward Reardon, and John or Jane Doe 1-10, alleges and states as

follows:

### PRELIMINARY STATEMENT

1.      This is a civil rights action, in which plaintiff seeks relief, vis-à-vis 42 sections 1983 and

1988 of title 42 to the United States Code, the common law of the State of New York, in addition

to the self-executing clauses or implied private causes of action of the New York State

Constitution, for the violations of his civil rights, as guaranteed and protected by the Fourth and

Fourteenth Amendments to the Constitution of the United States, as well as the Laws and

constitution of the State of New York.

2.      Plaintiff's claims stem from incident that transpired on July 26, 2017, in which defendants,

acting under color of state law, unlawfully stopped, questioned, searched, arrested and detained

Mr. Cooke, in the vicinity of 1035 Longwood Avenue, The Bronx, New York. As a result, Mr.

Cooke was deprived of his liberty over the course of two (2) days or approximately thirty-one (31) hours, suffered various physical, emotional and psychological injuries.

3.       Plaintiff seeks monetary damages (compensatory and punitive) against defendants, an award of costs and reasonable attorney's fees, with all interest then accrued, and such other and further relief, as this Court may deem just and proper.

## JURISDICTION

4.       This action arises under the First, Fourth, Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States, 42 U.S.C. §§ 1981, 1983 and 1988, the constitution of the State of New York and the laws of the City and State of New York.

5.       The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343(a)(3) and (4), 1367(a) and the doctrine of supplemental jurisdiction.

## VENUE

6.       Venue is properly laid within the Southern District of New York, as defendant, City of New York, is located within and a substantial part of the events giving rise to the claims occurred within the boundaries of the Southern District. 28 U.S.C. § 1391 (b) and (c).

## PARTIES

7.       At all relevant times herein, Plaintiff, DONALD COOKE ("Mr. Cooke"), is a Black or African American male, who resides in Newark, New Jersey.

8.       At all relevant times herein, Defendant, City of New York ("City"), is a municipal corporation duly organized and existing under the laws of the State of New York.

9.     At all relevant times herein, the New York City Police Department ("NYPD") is a wholly owned subsidiary, which is further wholly operated, managed, maintained, and controlled by Defendant City.

10.     At all relevant times herein, Defendant City, acting through its NYPD, was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and was responsible for the appointment, screening, hiring, training, supervision, discipline, retention and conduct of all NYPD personnel, including police officers, detectives, investigators, sergeants, lieutenants and other supervisory officers or officials, as well as the individually named NYPD Defendants herein.

11.     At all relevant times herein, Defendant, City, was responsible for enforcing the rules or regulations of the NYPD, and for ensuring that the NYPD personnel obey the laws and constitutions of the United States and the State of New York.

12.     At all relevant times herein, Defendant PETER SGANGA ("SGANGA", Shield No. 16552, Tax Reg. No. 935727, was a police officer, detective, supervisor, policymaker or official employed by the NYPD, or City of New York, and as such, was acting in the scope of his duties as an agent, servant and employee of the City of New York, or the NYPD. Defendant SGANGA is being sued in his individual and official capacities.

13.     At all relevant times herein, Defendant CHRISTOPHER McGRISKEN ("McGRISKEN"), Shield No. 23173, Tax Reg. No. 950865, was a police officer, detective, supervisor, policymaker or official employed by the NYPD, or City of New York, and as such, was acting in the scope of his duties as an agent, servant and employee of the City of New York, or the NYPD. Defendant McGRISKEN is being sued in his individual and official capacities.

14.     At all relevant times herein, Defendant MICHAEL KORABEL ("KORABEL"), Shield No. 1763, Tax Reg. No. 925558, was a police officer, detective, supervisor, policymaker or official employed by the NYPD, or City of New York, and as such, was acting in the scope of his duties as an agent, servant and employee of the City of New York, or the NYPD. Defendant KORABEL is being sued in his individual and official capacities.

15.     At all relevant times herein, Defendant EDWARD REARDON ("REARDON"), Shield No. 31794, Tax Reg. No. 931015, was a police officer, detective, supervisor, policymaker or official employed by the NYPD, or City of New York, and as such, was acting in the scope of his duties as an agent, servant and employee of the City of New York, or the NYPD. Defendant REARDON is being sued in his individual and official capacities.

16.     At all relevant times herein, Defendants JOHN or JANE DOE 1-10 were police officers, detectives, supervisors, policymakers or officials employed by the NYPD, or City of New York. At this time, Plaintiff does not know the true names or tax registry numbers of Defendants JOHN or JANE DOE 1-10, as such knowledge is within the exclusive possession of Defendants. The names, JOHN or JANE DOE 1-10, are fictitious and are meant as placeholders for the Police Officers who falsely arrested and subjected Plaintiff to excessive force.

17.     At all relevant times herein, defendants, JOHN or JANE DOE 1-10, were acting as agents, servants and employees of the City of New York, or the NYPD. Defendants JOHN or JANE DOE 1-10 are being sued in their individual and official capacities.

18.     At all relevant times herein, Defendants were acting under color of state law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the City or State of New York.

## FACTUAL CHARGES

19.     On, or about, July 26, 2017, at approximately 10:00 a.m., inside of 1035 Longwood Avenue, The Bronx, New York, Plaintiff was approached by defendants, including SGANGA, McGRISKEN, KORABEL and REARDON, who had their arms outstretched toward Plaintiff in a menacingly and threatening manner.

20.     Plaintiff was then physically restrained and grabbed about his body and shoulders as his arms were violently handcuffed behind his back in an excessively tight manner by or, at the direction of, defendants, including SGANGA, McGRISKEN, KORABE and REARDON.

21.     Defendants, including SGANGA, McGRISKEN, KORABEL and REARDON, then arrested and processed Plaintiff, which included fingerprinting, photographing and searching Mr. Cooke's person and property, along with subjecting him to various other indignities and violations of his civil rights.

22.     Defendants, including SGANGA, MCGRISKEN, KORABEL and REARDON, never observed Mr. Cooke committing any crime or violation of the law, or any other act that could reasonably be suspected or even interpreted as such.

23.     Defendants, including SGANGA, MCGRISKEN, KORABEL and REARDON, had no probable cause or reasonable suspicion to justify their stop, seizure, search, questioning, detention, or arrest of Mr. Cooke, as Defendants did not possess any evidence, credible or otherwise, that would lead a reasonable officer to believe that Plaintiff has committed any crime or violation of the law.

24.     Defendants, including SGANGA, MCGRISKEN, KORABEL and REARDON, were never informed by any identified civilian witness that Plaintiff had committed any crime or violation of law.

25.     Defendants, including SGANGA, MCGRISKEN, KORABEL and REARDON, arrested Plaintiff without even the semblance of probable cause, as defendants did not possess any information or evidence connecting Plaintiff to any crime or violation of the law, including the crimes defendants falsely charged Plaintiff with.

26.     Upon prosecutorial review of the charges and the available evidence known to defendants, including SGANGA, MCGRISKEN, KORABEL and REARDON, the Bronx County District Attorney's Office correctly concluded that there was no reasonable suspicious or probable cause to support Plaintiff's initial search and seizure, his subsequent arrest and detention, or any related criminal prosecution due to the dearth of evidence in said defendants' possession.

27.     As a result, Plaintiff was released from physical custody without being arraigned on any criminal charges, whatsoever.

28.     Defendants, including SGANGA, MCGRISKEN, KORABEL and REARDON, unjustly and unlawfully targeted Plaintiff for arrest, due to impermissible considerations, regarding Plaintiff's color, race, national origin, or ethnicity, or Defendants' perceptions thereof, as Defendants would not have violated Plaintiff's civil rights, if he was not a Black or African American male and member of protected class, as a racial ethnic minority.

29.     Defendants, SGANGA, MCGRISKEN, KORABEL and REARDON, engaged in a conspiracy to falsely arrest Plaintiff by personally conferring with each other regarding the fabrication of the aforementioned non-existent evidence, the suppression of exculpatory evidence, as well as the manner and means by which said fabrications could be used to deprive Mr. Cooke of his liberties and civil rights.

30.     Mr. Cooke asserts that Defendants, including SGANGA, MCGRISKEN, KORABEL and REARDON, illegally approached, stopped, searched, and then falsely arrested him, due to their

discriminatory prejudices against Black or African American males, their intent to use the instant arrest as leverage against Mr. Cooke, so that he would provide Defendants with information regarding other crimes or criminal suspects, their desires to fulfill an unconstitutional arrest quota, and to benefit from increased overtime compensation.

31.    Defendants, including SGANGA, MCGRISKEN, KORABEL and REARDON, arrested Plaintiff, because of their racially discriminatory beliefs, which compelled Defendants to equate to Mr. Cooke's race or ethnicity to criminal guilt or criminal knowledge.

32.    Defendants, including SGANGA, MCGRISKEN, KORABEL and REARDON, perpetrated multiple overt acts in furtherance of their obviously discriminatory inclinations, namely the complained-of stop, searches, assaults, batteries, seizure and arrest, against Plaintiff, even after they were unable to discover any evidence to justify such conduct.

33.    Defendants, including SGANGA, MCGRISKEN, KORABEL and REARDON, unlawfully stopped, questioned, searched, seized and arrested Plaintiff, due to Defendants' perception or consideration of Mr. Cooke's race, ethnicity or national origin.

34.    Defendants, including SGANGA, MCGRISKEN, KORABEL and REARDON, possessed no valid reason to stop, question, search or arrest Plaintiff, which gives rise to the strong inference that such conduct resulted from Defendants' unjust motivations or proclivities.

35.    Defendants, including SGANGA, MCGRISKEN, KORABEL and REARDON, subjected Mr. Cooke to disparate treatment compared to other individuals similarly situated, because Defendants did not stop, seize, search, detain, arrest or accuse any white individuals, who had engaged in activity identical to the kind that resulted in Plaintiff's illegal search and seizure, namely being a member of the community with a valid driver license or ownership of a motor vehicle.

36.     Defendants, including SGANGA, MCGRISKEN, KORABEL and REARDON, subjected Mr. Cooke to disparate treatment compared to other individuals similarly situated, because Defendants did not place any other white individuals without felony records within the any photo arrays or photo management system, despite the race of the suspect being unknown.

37.     Plaintiff asserts that the Defendants, including SGANGA, MCGRISKEN, KORABEL and REARDON, who violated Plaintiff's civil rights, are part of a larger pattern and practice of similar misconduct, which is so widespread, pervasive and consistent throughout the NYPD and the City of New York that the commission such constitutionally violative behavior has become tantamount to an official policy or custom within the NYPD and City of New York or, at the very least, conclusive evidence that the City and the NYPD have either tacitly approved of such egregious wrongdoings or that they have become deliberately indifferent to the civil rights of those who may come into contact with their police officers.

38.     The individually named Defendants herein, as well as other officers serving in the employ of the NYPD and City of New York, have blatantly, shamelessly, consistently and repeatedly engaged in conducting violative of the civil rights guaranteed and protected by Constitution of the United States, in addition to the laws and Constitution of the State of New York, all without incurring any ramifications for such misconduct and, ostensibly, with the full and complete blessing of the NYPD, the City of New York and their respective policymakers and supervisors.

39.     *The New York Times*, as well as numerous other reputable journalistic enterprises, have reported on the widespread corruption within the NYPD and City of New York, particularly the incredibly disconcerting proclivity of many NYPD officers to lie about subject matters that are materially relevant to criminal prosecutions, including the complete fabrication of arrest evidence and witnesses. Also detailed, is the NYPD's obstinate refusal to effectuate corrective or preventive

measures to combat the inevitable recurrence of such misdeeds, and perhaps most troubling, the NYPD's alarming tendency to, instead, reward and promote these officers, including those who were inculpated via incontrovertible evidence, such as video evidence.

40.     The constitutionally repugnant behavior that persists within the ranks of the NYPD results from the NYPD's own policies, rules and procedures, namely the NYPD's incredibly flawed and illegal use of arrest quotas. Despite its illegality, such policies remain systemic throughout the NYPD and its individual commands. The NYPD, however, was not content in compelling its officers to effect as many arrests as possible, regardless of the presence of any legal right to do, it promulgated various subsets of quotas, which are predicated on race, color or ethnicity. Additionally, the NYPD, its supervisors or policymakers would assign varying point values to arrests, which were, again, impermissibly based upon the arrestee's race, color or ethnicity. Unsurprisingly, officers would be better rewarded for minority arrests or summonses. This egregious conduct has reported by numerous respected media outlets and publications and has even formed the basis for federal lawsuits against the City and the NYPD, which were commenced by its own employee officers.

41.     On June 17, 2020, the *New York Daily News* published an article, by Graham Rayman, entitled "Brooklyn Cop Claims he was Punished for not Meeting Arrest Quotas, Refusing to Take Responsibility for Controversial Arrest in which he Wasn't Involved," describing allegations from an NYPD Police Officer, Terrence Dickerson, that he was retaliated against by the NYPD for refusing to adhere to mandatory racially based arrest quotas and for his refusal to accept responsibility for a controversial and publicized arrest via the excessive force, despite the fact that he was not even at the scene.

42.     Another article with a title that speaks for itself, also published by the *New York Daily News*, on December 5, 2019, and written by Graham Rayman, is entitled "Ex-Cop Details NYPD 'Collar Quotas'—Arrest Black and Hispanic Men, 'No Cuffs on Soft Targets' of Jews, Asians, Whites: Court Docs."

43.     *The New York Times*, on December 6, 2019, published an article by Joseph Goldstein and Ashley Southall, entitled "I Got Tired of Hunting Black and Hispanic People," which revealed a disturbing account from a different NYPD Police Officer, Anthony Diaz, describing a police force that measures the quality of police work by the quantity of minority arrests.

44.     On March 18, 2018, *The New York Times* published an explosive article, entitled "Promotions, Not Punishments for Officers Accused of Lying," written by Joseph Goldstein. Mr. Goldstein shines a light on the multitude of flaws within the CCRB and the NYPD, highlighting the fact that the substantiation of a claim against an officer will invariably rely on the presence of incontrovertible proof against the officer. Due to the rarity availability of this type of evidence, an alarmingly small percentage of officer misconduct claims are substantiated. The CCRB is further handicapped by a terribly designed system that requires evidence of a virtually indisputable nature to substantiate any claim against an officer. The article also details the NYPD's persistent reluctance to investigate or discipline officers who lie and even posits that this reluctance is a significant cause of the lying pandemic within the NYPD. The article references various officers and detectives who were the subject of credible accusations relating to the officers' intentionally false statements, with some allegations coming from federal and state judges.

45.     On September 12, 2019, *The New York Times* published another article by Joseph Goldstein, entitled "Officers Said They Smelled Pot. The Judge Called Them Liars." Unsurprisingly, this article dealt with the unusually high frequency of officers using the odor of

marijuana to excuse a search that conspicuously does not result in the recovery of any marijuana. It should not require an article in *The New York Times* to call attention to such patently disingenuous tactics, but has become necessary for a variety of reasons, including the NYPD's failure to correct such behavior, the willingness of prosecutors and judges to credit the lying officers and the increasing rate of occurrence.

46.    On April 24, 2019, *The New York Times* published an article, entitled "Detective's Lies Sent Three People to Prison, Prosecutors Charge," by Sean Piccolo, detailing the lies of NYPD Second Grade Detective Joseph Franco and how those lies resulted in the imprisonment of at least three innocent people. The article described how Det. Franco lied about observing drug transactions on at least three separate occasions, lies that were only uncovered through contradictory video evidence. Det. Franco's lies resulted in the innocent individuals each being sentenced to prison terms in excess of one-year.

47.    Other articles include: (i) "Testilying' by Police: A Stubborn Problem.," by Joseph Goldstein, *The New York Times*, March 18, 2018; (ii) "New York Detective Charged with Faking Lineup Results," by Joseph Goldstein, *The New York Times*, February 17, 2018; (iii) "He Excelled as a Detective, Until Prosecutors Stopped Believing Him," by Joseph Goldstein, *The New York Times*, October 17, 2017; (iv) "Review Board Notes Rise in New York Police Officers' False Statement," by J. David Goodman, *The New York Times*, May 14, 2015; (v) "In Brooklyn Gun Cases, Suspicion Turns to the Police," by Stephanie Clifford, *The New York Times*, December 11, 2014; (vi) "Detective is Found Guilty of Planting Drugs," by Tim Stelloh, *The New York Times*, November 1, 2011; and (vii) "The Drugs? They Came From the Police," by Jim Dwyer, *The New York Times*, October 13, 2011.

48.     The NYPD has a longstanding and ignominious record of failing to discipline its officers, or even entertaining allegations of wrongdoing against them. On June 26, 2019, *The New York Times* published an article, entitled "2,495 Reports of Police Bias. Not One Was Deemed Valid by the N.Y.P.D." This article reported that within the last five (5) years, almost 2,500 separate individuals have filed formal complaints with the NYPD alleging that an officer acted with bias toward them, with not a single one being substantiated by the NYPD. Such a finding is plainly incredible and obviously the result of deliberately poor or nonexistent investigatory protocols. The report further impugned the NYPD's commitment to combat the prejudices and the biases exhibited by many of its officers.

49.     Upon information and belief, the NYPD, the City of New York, and their respective policymakers, officials or supervisors have imposed, tacitly approved or acquiesced to policies, customs, or patterns and practices within the NYPD that resulted in Plaintiff's arrest without probable cause.

50.     Upon information and belief, the NYPD, the City of New York, and their respective policymakers or supervisors have failed to provide adequate training regarding the identification of probable cause, reasonable suspicion or the appropriate amount of force to be used.

51.     Defendants' actions, pursuant to Plaintiff's underlying arrest, which occurred without even the semblance of probable cause, were so blatantly violative of Plaintiff's civil rights that the tacit approval of identical or similar acts by the policymakers or supervisors of the NYPD and the City of New York, as well as their deliberate indifference towards the rights of any individuals who may come into contact with Defendants, should be inferred, because such flagrant deprivations of constitutionally protected rights could not and would not occur without the tacit approval or

deliberate indifference regarding the commission of such violations by the policymakers or supervisors of the NYPD and City of New York.

52.     Upon information and belief, further details and facts, relating to the unlawful policies, customs or patterns and practices of the NYPD, City of New York and their respective policymakers, supervisors, police officers or employees, will become known after the completion of discovery, as such information is presently within the exclusive possession of Defendants, the NYPD and City of New York.

53.     Upon information and belief, the personnel files, records and disciplinary histories of the officer Defendants will reveal a history of Constitutional violations indicative of Defendant City's knowledge that the individual officer Defendants were unfit for employment as NYPD officers, or for employment in general, and that the probability of the individually named Defendants committing similar violations in the future was extremely high.

54.     Upon information and belief, said personnel files, records and disciplinary histories will conclusively show that the City and the NYPD were fully aware of Defendants' past constitutional violations, the unacceptably high probability for the recurrence of similar transgressions, the unreasonably dangerous situations that were likely to result from their hiring or retention, as well as their unsuitability for employment as law enforcement officers, or for employment in general, and that the NYPD and City of New York failed to engage in any preventive or corrective action intended to diminish the likelihood of recurrence for such violations, which is tantamount to the City's tacit approval of such misconduct or the City's deliberate indifference towards the civil rights of those who may interact with its employees, including Defendants, SGANGA, MCGRISKEN, KORABEL and REARDON.

55.     Upon information and belief, the individually named Defendants have combined to be named as Defendants in numerous lawsuits that have accused them of committing violations similar or identical to those alleged herein, all of which have resulted no disciplinary or corrective action of any kind.

56.     Upon information and belief, the NYPD and CITY and have failed, or outright refused, to correct the individually named Defendants' predilections to engage in unconstitutional behavior or attempt to prevent the recurrence of such misconduct.

57.     The aforementioned acts of Defendants, including CITY, SGANGA, MCGRISKEN, KORABEL and REARDON, directly or proximately resulted in the deprivation or violation of Plaintiff's civil rights, as guaranteed and protected by the Fourth and Fourteenth Amendments to the United States Constitution, as well as the laws and Constitution of the State of New York.

58.     As a direct or proximate result of said acts, Plaintiff was caused to suffer the loss of his liberty, irreparable reputational harm, loss of earnings and potential earnings, physical injury, as well as severe and permanent emotional distress, including fear, embarrassment, humiliation, traumatization, frustration, extreme inconvenience, and anxiety.

### FIRST CAUSE OF ACTION
Unlawful Search & Seizure Under
New York State Law

59.     Plaintiff re-alleges and re-avers Paragraph 1 through 58 of this Complaint, as if fully set forth herein.

60.     Defendants subjected plaintiff and his property to unreasonable searches and seizures without a valid warrant and without reasonable suspicion or probable cause do so.

61.     Plaintiff was conscious and fully aware of the unreasonable searches and seizures to his person and property.

62.    Plaintiff did not consent to the unreasonable searches and seizures to his person or property.

63.    The unreasonable searches and seizures to plaintiff's person and property were not otherwise privileged.

64.    Accordingly, defendants violated plaintiff's right to be free from unreasonable searches and seizures, pursuant to Article I, section 12, of the constitution of the State of New York.

65.    Defendant City of New York, as employer of the individual Defendants, is responsible for their wrongdoings under the doctrine of *respondeat superior*.

66.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## SECOND CAUSE OF ACTION
Unlawful Search & Seizure Under
42 U.S.C. § 1983 Against Individual Defendants

67.    Plaintiff re-alleges and re-avers Paragraph 1 through 66 of this Complaint, as if fully set forth herein.

68.    Defendants subjected plaintiff and his property to unreasonable searches and seizures without a valid warrant and without reasonable suspicion or probable cause do so.

69.    Plaintiff was conscious and fully aware of the unreasonable searches and seizures to his person and property.

70.    Plaintiff did not consent to the unreasonable searches and seizures to his person or property.

71.    The unreasonable searches and seizures to plaintiff's person and property were not otherwise privileged.

72.    Accordingly, defendants violated plaintiff's right to be free from unreasonable searches and seizures, pursuant to the Fourth Amendment to the Constitution of the United States.

73.     As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

### THIRD CAUSE OF ACTION
False Arrest & False Imprisonment Under
New York State Law

74.     Plaintiff re-alleges and re-avers Paragraph 1 through 73 of this Complaint, as if fully set forth herein.

75.     Defendants subjected Plaintiff to false arrest, false imprisonment, and deprivation of liberty without a valid warrant or probable cause.

76.     Plaintiff was conscious of his confinement.

77.     Plaintiff did not consent to his confinement.

78.     Plaintiff's arrest and false imprisonment was not otherwise privileged.

79.     Defendant City of New York, as employer of the individual Defendants, is responsible for their wrongdoings under the doctrine of *respondeat superior*.

80.     As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

### FOURTH CAUSE OF ACTION
False Arrest & False Imprisonment Under
42 U.S.C. § 1983 Against Individual Defendants

81.     Plaintiff re-alleges and re-avers Paragraph 1 through 80 of this Complaint, as if fully set forth herein.

82.     The Defendants violated the Fourth and Fourteenth Amendments to the Constitution of the United States by wrongfully and illegally arresting, detaining and imprisoning Plaintiff.

83.     The wrongful, unjustifiable, and unlawful apprehension, arrest, detention, and imprisonment of Plaintiff was carried out without a valid warrant, without Plaintiff's consent, and without probable cause or reasonable suspicion.

84.     At all relevant times, Defendants acted forcibly in apprehending, arresting, and imprisoning Plaintiff.

85.     As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

**FIFTH CAUSE OF ACTION**
Assault & Battery Under
New York State Law

86.     Plaintiff re-alleges and re-avers Paragraph 1 through 85 of this Complaint, as if fully set forth herein.

87.     At all relevant times, Defendants caused Plaintiff to fear for his physical well-being and safety and placed him in apprehension of immediate harmful or offensive touching.

88.     Defendants engaged in and subjected Plaintiff to immediate harmful and/or offensive touching and battered him without his consent or justification.

89.     Due to the intentional, willful and unlawful acts of Defendants, Plaintiff suffered damages.

90.     Defendant City, as employer of the individual Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

91.     As a direct and proximate result of this breach, Plaintiff sustained the damages hereinbefore alleged.

**SIXTH CAUSE OF ACTION**
Deprivation of Rights & Denial of Equal Protection of the Laws under
New York State law

92.     Plaintiff re-alleges and re-avers Paragraph 1 through 90 of this Complaint, as if fully set

forth herein.

93.     Defendants' selective treatment of Plaintiff was based on impermissible considerations, such as their intent to inhibit or punish Plaintiff's exertion of his Constitutional rights, or a malicious or bad faith intent to injure Plaintiff.

94.     Defendants applied facially neutral laws against Plaintiff in a discriminatory manner.

95.     Defendants, motivated by discriminatory animus, applied facially neutral statutes with adverse effects against Plaintiff.

96.     Defendants did not possess a rational basis, excuse or justification for applying any laws or statutes against Plaintiff.

97.     Accordingly, defendants violated Plaintiff's civil rights, pursuant to Article I, section 11, of the constitution of the State of New York, as well as Article VII, section 79-n, of the New York Civil Rights Law.

98.     Defendant City, as employer of the individual Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

99.     As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

<u>**SEVENTH CAUSE OF ACTION**</u>
Deprivation of Rights & Denial of Equal Protection of the Laws under
42 U.S.C. §§ 1981 & 1983 Against Individual Defendants

100.    Plaintiff re-alleges and re-avers Paragraph 1 through 109 of this Complaint, as if fully set forth herein.

101.    Defendants also selectively treated Plaintiff in comparison to others similarly situated.

102.    Defendants' selective treatment of Plaintiff was based on impermissible considerations, such as their intent to inhibit or punish Plaintiff's exertion of his Constitutional rights, or a malicious or

bad faith intent to injure Plaintiff.

103.     Defendants applied facially neutral laws against Plaintiff in a discriminatory manner.

104.     Defendants, motivated by a discriminatory animus, applied facially neutral penal statutes with adverse effects against Plaintiff.

105.     Defendants did not possess a rational basis, excuse or justification for applying any laws or statutes against Plaintiff.

106.     Defendant City, as employer of the individual Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

107.     Accordingly, defendants violated Plaintiff's Constitutionally protected rights, pursuant to the Fourteenth Amendment to the Constitution of the United States.

108.     As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## EIGHTH CAUSE OF ACTION
Failure to Intervene Under
New York State Law

109.     Plaintiff re-alleges and re-avers Paragraph 1 through 108 of this Complaint, as if fully set forth herein.

110.     Those Defendants that were present but did not actively participate in the aforementioned unlawful conduct, observed such conduct, had an opportunity to prevent such conduct, had a duty to intervene and prevent such conduct, and failed to intervene.

111.     Defendant City, as employer of the individual Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

112.     As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## NINTH CAUSE OF ACTION
Failure to Intervene Under
42 U.S.C. § 1983 Against Individual Defendants

113.    Plaintiff re-alleges and re-avers Paragraph 1 through 112 of this Complaint, as if fully set forth herein.

114.    Those Defendants that were present but did not actively participate in the aforementioned unlawful conduct observed such conduct, had an opportunity to prevent such conduct, had a duty to intervene and prevent such conduct, and failed to intervene.

115.    Accordingly, the Defendants who failed to intervene violated the First, Fourth, Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States.

116.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## TENTH CAUSE OF ACTION
Negligent Hiring, Training, Retention & Supervision Under
New York State Law

117.    Plaintiff re-alleges and re-avers Paragraph 1 through 116 of this Complaint, as if fully set forth herein.

118.    Defendant City owed a duty of care to Plaintiff to adequately hire, train, retain and supervise its employee defendants.

119.    Defendant City breached those duties of care.

120.    Defendant City placed defendants in a position where they could inflict foreseeable harm.

121.    Defendant City knew or should have known of its employee defendants' propensity for violating the individual rights granted under the United States Constitution and the laws of the State of New York, prior to the injuries incurred by Plaintiff.

122.     Defendant City failed to take reasonable measures in hiring, training, retaining and supervising its employee defendants that would have prevented the aforesaid injuries to Plaintiff.

123.     As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

**<u>ELEVENTH CAUSE OF ACTION</u>**
Municipal "*Monell*" Liability Under
42 U.S.C. § 1983 Against Defendant City

124.     Plaintiff re-alleges and re-avers Paragraph 1 through 123 of this Complaint, as if fully set forth herein.

125.     Defendant City maintained a policy or custom that caused Plaintiff to be deprived of his civil rights, tacitly approved of such violative conduct or was deliberately indifferent toward the potential exposure of individuals, such as plaintiff, to such violative behavior.

126.     Defendant City's employee police officers have engaged in an illegal pattern and practice of misconduct, so consistent and widespread that it constitutes a custom or usage, of which a supervisor or policymaker must have been aware of.

127.     Defendant City, its policymakers and supervisors failed to provide adequate training or supervision to their subordinates, to such an extent that is tantamount to the City's deliberate indifference toward the rights of those who may come into contact with defendant City's employees.

128.     Defendant City's employees engaged in such egregious and flagrant violations of plaintiff's Constitutional rights that the need for enhanced training or supervision is obvious and equates to a display of deliberate indifference by defendant City and its policymakers toward the rights of individuals, who may come into contact with defendant City's employees.

129.    Defendant City's repeated refusal or failure to install or apply corrective or preventive measures constitutes the tacit approval of such violative behavior or a deliberate indifference to the rights of those who may be affected by such behavior.

130.    Defendant City's conduct caused the violation of plaintiff's civil rights enumerated within the Constitution of the United States, as the First, Fourth, Fifth, Sixth and Fourteenth Amendments, thereto.

131.    As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendants, jointly and severally, as follows:

a)      In favor of Plaintiff in an amount to be determined by a jury for each of Plaintiff's causes of action;

b)      Awarding Plaintiff punitive damages in an amount to be determined by a jury;

c)      Awarding Plaintiff compensatory damages in an amount to be determined by a jury;

d)      Awarding Plaintiff reasonable attorney's fees and costs, pursuant to 42 U.S.C. § 1988, the Administrative Code of the City of New York and the New York Civil Rights and Executive Laws; and

e)      Granting such other and further relief, as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: Bayside, New York
        August 31, 2021

Respectfully submitted,

/s/ *Samuel C. DePaola*

Samuel C. DePaola, Esq.

Bar Number: SD0622

Sim & DePaola, LLP

*Attorneys for Mr. Cooke*

4240 Bell Blvd, Ste 201

Bayside, NY 11361

T: (718) 281-0400

F: (718) 631-2700

sdepaola@simdepaola.com